### HILLHOUSE *versus* PECK.

1. Words, charging a party with having "broken open and read a letter," sen by mail, are not actionable, *per se.*

This action was slander, proseuted in Greene Circuit court. The words charged to be the ground of the slander, were, that the defendant charged the plaintiff with having broken open, and read a letter, sent by mail to one Barron; and lodged in the post-office at Greensborough, of which office the defendant was assistant.

The question raised in the court below, on a demurrer, which was sustained, and revived in this court—was, whether the words were actionable, *per se.*

TAYLOR, J.—This action of slander was brought by the plaintiff in error, against the defendant, in the Circuit court of Greene county. A demurrer

was filed to the two first counts of the declaration, which was sustained; and this is now assigned as error.

Several objections have been made to the declaration, for alleged deficiencies in the averments, &c.. These, it is unnecessary to consider, as the conclusion to which we have come, as to the nature of the words charged as slanderous, will dispose of the case.

The declaration recites, that a letter had been sent by mail, from the city of Mobile, to J. Barron of the county of Greene, and was lodged in the post office at Greensborough, in that county, of which post office the defendant was deputy post-master; which letter had been opened, before it was delivered to J. Barron: and avers, that in a conversation with the plaintiff, about the letter, the defendant said, "you," meaning the plaintiff, "have broken open, and read our letter;" meaning the said letter, directed to the said J. Barron.

This court is to decide, whether or not, these words are, in themselves, actionable. And, this duty we will endeavor to perform, without any regard to the excitement, which, in the course of the argument, we have been told, prevails in the neighborhood of the residence of the parties, on the subject. Such circumstances had much better never be referred to by counsel, as they cannot be permitted to have the slightest influence upon our decision.

There is, confessedly, much difficulty, in drawing the line of distinction, between words which are, and those which are not, in themselves, actionable. This difficulty does not arise from the want of established rules, on the subject; but from the various shades of criminality, which may be imputed, by different terms

and expressions, and the nice distinctions which must, necessarily, be often made by the courts, as they approach the line between words which are, and those which are not actionable.

One broad rule is, that " no charge upon the plaintiff, however foul, will entitle him to damages, unless it be of an offence, punishable in a court of criminal jurisdiction." If this were the only rule, the line between words actionable, and those which are not, would be plain and clearly defined. It would only be necessary to ascertain whether the words declared on, imputed an indictable or punishable offence, in a court of law ; and if so, the suit would be well brought. The application of this rule, untrammelled by any other, to the case before us, would be easy.

The twenty-second section of the act of Congress, " to reduce into one, the several acts, establishing and regulating the post office department," passed third March, 1825, makes it indictable and punishable, by fine and imprisonment, to " open any letter or packet, which shall have been in a post office, or in custody of a mail-carrier, before it shall have been delivered to the person to whom it is directed, with a design to obstruct the correspondence, to pry into another's business or secrets," &c. The words intended to be charged in the declaration, and which, for the present enquiry, it is admitted, are properly averred, impute an offence which is indictable and punishable, " in a court of criminal jurisdiction."

But, an additional rule has been adopted, in modern times, which has been recognised by this court, in several instances. . It is, " that the charge, if true, must subject the party to an indictment for a crime,

involving *moral turpitude*, or that which would draw after it an *infamous punishment.*"

This rule excludes a great number of indictable offences from its operation, and leaves it to the courts to determine, what offences they are, which involve "*moral turpitude*," and what punishments are "infamous."

So far as the infamy of the punishment is concerned, the decisions are uniform, that it must be corporal, and that fine and imprisonment do not constitute an "infamous punishment."

The nature of the punishment, then, does not render the words alleged to have been spoken, in this case, actionable. Do they amount to a charge involving moral turpitude?

In the case of *Purdue* vs. *Burnett*,ᵃ the opinion delivered by Judge *Crenshaw*, contains the following passage. "Does the offence then involve moral turpitude? In other words, is it an infamous offence? Capital offences of all grades, are infamous, by reason of their atrocity. So are all grades of the *crimen falsi*—because fraud is an essential ingredient.

ᵃ Miner's R. 139.

Notwithstanding the reason which is here given for offences in the nature of the *crimen falsi*, being infamous; to charge a man with having committed a fraud, if true, would not necessarily render him infamous: much would depend upon the circumstances by which the act was accompanied. In the opinion of the Judge "moral turpitude" is involved only when the offence is "infamous." Probably a more correct definition could not be given to the expression when technically applied. Ethical writers would define many offences as arising *ex turpi causa* which,

although indictable, are not such as would sustain an action of slander by a person charged with having committed them. What could more degrade a man in public estimation than the belief that he had beaten his unoffending wife or father? Yet it would not be pretended that a charge of this kind would be actionable.

The authorities appear to amount to this, that "the words must contain an express imputation of some crime liable to punishment, some capital offence, or other infamous crime or misdemeanor."[a]

[a]Starkie on Slander, 40

Do the words in this case contain a charge of an infamous nature?

That the estimation in which a member of society was held, if good, would be greatly affected by breaking open a sealed letter directed to another, can not be doubted. He would be considered as possessing a most inordinate curiosity, which would prompt him to resort to extremely unjustifiable means to gratify it; but it would not attach to him the character of infamy. If he had before held but a moderate place in the estimation of others, it would scarcely have a sensible influence upon his standing. The circumstance of the offence being made indictable does not render it the more infamous in public estimation.— It forms one of the ingredients of a slanderous charge; but the other, the infamy of it, is still a matter of public opinion. What would have been thought of such an act, without the statute which renders it punishable? Although it would be viewed as highly improper, yet it could not be considered as infamous.

Suppose a sealed letter confided to one man to be delivered to another, was to be broken open by the

carrier, the nature of the offence, would, in a moral light, be greater than in the one charged upon the plaintiff, by the defendant, because there would be the breach of confidence in addition; yet, it would not be considered, morally speaking, as worthy of being numbered in the class of crimes. The act of Congress was evidently passed, more for the purpose of aiding and protecting the post office department, than to punish crime. If, otherwise, the States would have made it indictable, or, in some way, legally punishable, to break open a sealed letter, without authority, when confided to an individual: nay, the common law itself would have done so; but, the common law is silent, on the subject, and no statute of the kind has ever been enacted. That many offences which are *mala per se*, are not indictable, is no answer to this argument—because these are of a nature which the better policy excludes from public investigation.

In New York, it has been determined, that the mere circumstance of common prostitutes' being subjected, by statute, to punishment, as disorderly persons, does not render it actionable to call a woman a public prostitute.[a] It is true, in some other States, in which prostitution is made an indictable offence, it has been determined, that such a charge is actionable; but this does not shake the positions which have been taken—because that is an offence, most infamous in its character—excluding those guilty of it, from all society, except that of the most abandoned.

It is impossible to lay down any line, which would obviously place all words affecting reputation, on the one side or other, of it. Many cases must continue to be decided as they arise, upon their peculiar circumstances. While the action for words should not

*3John.190

be discountenanced entirely, it certainly should not be too much encouraged. Expressions of malice, calculated to produce aggravated injury to reputation, should bring upon their author, the condign punishment of the law. But nothing is more harrassing to the courts, nor more injurious to the harmony of neghborhood society, than the prosecution of actions of slander, for light or frivolous causes. The successful party, in such an action, achieves a victory, by which he gathers but few laurels—often, indeed, is much the worse by the contest—while the progress of the suit has tended to embitter the feelings of the parties and their respective friends, more and more, every day of its continuance. It is rare, indeed, that the tongue of the slanderer impresses more than a surface blot upon reputation, which soon disappears, before a continued course of integrity and virtue.

In this case, as in others, where the charge, if true, would, in a measure, affect the character of the accused, but for which no action is given, the plaintiff must depend upon the effect of a virtous conduct, to prove it false. The judgment is affirmed.